In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-089 CR


____________________



SCOTT DAVIS ADAMS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law Number Two


Montgomery County, Texas


Trial Cause No. 03-181446






OPINION


 A jury convicted Scott Davis Adams of driving while intoxicated. The trial court
sentenced him to 180 days in the county jail, suspended the imposition of sentence, and
placed him on probation for one year. The trial court also required Adams to do forty
hours of community service and fined him $1,500. We affirm. 

 Officer Bodden testified for the State. In the early morning hours, Bodden's radar
clocked Adams' vehicle speed at 49 m.p.h. in a 30 m.p.h. zone. Bodden stopped the car
for speeding. Inside the vehicle were Adams and two passengers. Bodden detected a
"strong odor of alcoholic beverage coming from inside the vehicle." He asked Adams,
the driver, to step out of the car. Bodden testified the only sign of intoxication at that point
was the odor of alcohol on Adams' breath. When Bodden directed Adams to step out of
the car and walk in front of the police car, Adams had no difficulty in following those
instructions; Adams did not stagger or stumble. 

 Officer Bodden administered the following field sobriety tests recorded on videotape
at the scene: horizontal gaze nystagmus test (HGN), nine-step walk-and-turn test, and the
one-leg stand test. Polite and cooperative, Adams did everything Bodden asked of him. 
Adams exhibited six clues, the maximum number possible, on the HGN test. See Howard
v. State, 137 S.W.3d 282, 284 (Tex. App.--Fort Worth 2004, no pet.). Out of eight
possible clues on the walk-and-turn test, Adams exhibited four. Bodden testified Adams
was "unable to maintain [his] balance during the instruction phase," stepped off the line,
missed heel to toe, and performed an improper turn. Of the four possible clues on the one-leg stand test, Adams exhibited only one. He swayed while trying to balance himself.
Officer Bodden also administered the portable breath test (PBT) which indicated the
presence of alcohol. When asked what impairment of mental or physical faculties the
defendant showed at the stop, Bodden pointed to Adams' "inability to observe the speed
limits," the clues observed during the field sobriety tests, and the alcohol odor on his
breath. Based on the combination of the field tests and his observations, Bodden arrested
Adams for DWI and took him to the police station to conduct the Intoxilyzer 5000 breath
test. From the time of the stop to the time of the Intoxylizer 5000 test, Adams did not
consume any alcohol. The results of the Intoxilyzer 5000 test were readings of .09 and
.094. The officer agreed it was possible for a person to fail the breath test at the later time
(the Intoxilyzer 5000 test), but pass a breath test at the time of the stop. 

 In issue one Adams argues the evidence was factually insufficient to support his
conviction. The Court of Criminal Appeals has recently restated the standard for
reviewing factual sufficiency as follows:

 There is only one question to be answered in a factual-sufficiency
review: Considering all the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? However, there are two
ways in which the evidence may be insufficient. First, when considered by
itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. Second, there may be both
evidence supporting the verdict and evidence contrary to the verdict. 
Weighing all the evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not
have been met, so the guilty verdict should not stand. This standard
acknowledges that evidence of guilt can "preponderate" in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Stated another way, evidence supporting guilt can
"outweigh" the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard. 


Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004) (footnote omitted). 
Adams argues the evidence that he was intoxicated at the "time of driving" was weak and
outweighed by contrary evidence. First, he says the lack of extrapolation evidence from
the .09 and .094 Intoxilyzer test back to the time of driving renders the evidence factually
insufficient. Next, he contends the field sobriety tests were not administered correctly and
do not show that Adams' mental or physical faculties were impaired by reason of
introduction of alcohol into the body. 

 The charge tracked the two definitions of intoxication contained in Tex. Pen. Code
Ann. § 49.01(2) (Vernon 2003). Those definitions set forth alternate means for the State
to prove intoxication: by proving loss of normal use of physical or mental faculties by
reason of the introduction of alcohol into the body; and/or by proving an alcohol
concentration of .08 or more. See id.; see also Bagheri v. State, 119 S.W.3d 755, 762
(Tex. Crim. App. 2003). Adams says the State did not prove either means. 

 The jury heard Bodden testify that Adams was speeding, had alcohol on his breath, 

exhibited all six clues on the HGN test, four clues out of eight on the walk-and-turn test,
and one clue on the one-leg stand test. The Intoxilyzer 5000 test, administered fifty-four
minutes after the stop, showed intoxication levels of .09 and .094. The State offered no
extrapolation evidence to show the alcohol level at the time of stop was .08 or above. Julie
Evans, the State's expert, testified it was "possible that [Adams' blood alcohol level was
below] .08 at the time of driving." Bodden acknowledged Adams had no difficulty in
following instructions or in retrieving his driver's license and insurance card, and he did
not stagger or stumble. The jury also viewed a videotape of Adams at the stop that night. 
The members of the jury were free to evaluate and weigh the evidence. See Zuniga, 144
S.W.3d at 482 ("Because the jury is the judge of the facts and the appellate court's role
is to review criminal convictions, the appellate court is not allowed to 'find' facts or
substitute its judgment for that of the jury."). Viewing the foregoing evidence in a neutral
light, favoring neither party and giving due deference to the fact finder's determinations,
we conclude there is factually sufficient evidence that Adams was intoxicated at the time
he was observed driving in a public place. See Stewart v. State, 129 S.W.3d 93, 96-97
(Tex. Crim. App. 2004) (Court of Criminal Appeals held that breath test results, along
with the officer's testimony and the videotape of appellant, were probative evidence of the
appellant's intoxication.). Issue one is overruled. 

 In issue two, Adams argues the trial court erred in failing to grant a mistrial when
Officer Bodden testified the portable breath test (PBT) showed Adams "[had an] alcohol
concentration of over .08." Sustaining Adams' objection, the trial judge ruled the PBT
result was admissible only to show the presence or absence of alcohol, but not to show the
actual quantitative amount of alcohol. The following exchange then occurred in the
presence of the jury:

 Q. [Prosecutor]: After you [Officer Bodden] had [Adams] perform the one-leg stand, did you have [him] perform any other tests? 


 A. [Officer Bodden]: Yes, I gave him a preliminary breath test for his
benefit. 


 [Defense Counsel]: I'd reurge the same objection.


 [The Court]: Objection is overruled.


 Q. What did the preliminary breath test show?


 A. That he did have alcohol concentration of over .08.


 [Defense Counsel]: Objection, that's a violation of the motion in limine. 


The prosecutor agreed with both the trial judge and defense counsel that Bodden should
not have mentioned the quantitative amount. Officer Bodden testified he thought he "could
say it was over .08 but not the numeric amount." He indicated he was unaware that all
he could say was that the PBT showed the presence of alcohol. The trial court instructed
the jury to disregard Bodden's answer, but denied defendant's request for a mistrial. 

 "A mistrial is a device used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile." Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999). We review the denial of a motion for mistrial 
under an abuse of discretion standard. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim.
App. 2004). To determine whether a given error necessitates a mistrial, the reviewing
court examines the particular facts of the case. Id. In most instances, the trial court's
instruction to disregard cures any harm. See id. Adams argues the trial judge's instruction
in this case was insufficient to cure the harm from the inadmissible evidence. We quote
the trial court's instruction to the jury:

 Members of the jury, the law is that this portable breath test that the officers
carry in their car, any results of the quantitative amount of alcohol are not
admissible. The qualitative amount, that is, whether or not the presence or
absence of alcohol is admissible but not what percentage it is that test
showed, if any. It's simply not admissible and the officer maybe wasn't
aware of that. You're instructed to disregard any evidence of the qualitative
[sic] amount or amount of concentration that the portable breath test showed. 


When the trial court instructs a jury to disregard, we presume the jury follows the trial
court's instructions. See Waldo v. State, 746 S.W.2d 750, 752-53 (Tex. Crim. App.
1988). Only for "highly prejudicial and incurable errors" is a mistrial appropriate.
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. denied, Simpson
v. Texas, ___ U.S. ___, 124 S.Ct. 2837, 159 L.Ed.2d, 270, 72 U.S.L.W. 3749 (2004).

 The Waco court has gauged the effectiveness of an instruction to disregard by using
the following factors: "the nature of the [improper comment]; the persistence of the
prosecutor; the flagrancy of the violation; the particular instruction given; the weight of
the incriminating evidence; and the harm to the accused as measured by the severity of the
sentence." Roberson v. State, 100 S.W.3d 36, 41 (Tex. App.--Waco 2002, pet. ref'd). 
Applying those factors, we find the trial court's instruction to disregard was effective. 
Officer Bodden's remark appears to have been inadvertent. Bodden stated he was unaware
he could not say the test result was above the .08 figure. The prosecutor acknowledged
the answer should not have been given in the manner it was, and did not mention the
quantitative result of the PBT again. The trial court's instruction to disregard the evidence
was pointed, clear, and definitive: the trial judge expressly stated the evidence was
inadmissible and the jury was not to consider it. There was other evidence supporting the
"intoxication" element, including the officer's testimony concerning the alcohol odor, the
field sobriety tests, the video, and the Intoxilyzer 5000 test. Finally, given the statutory
punishment for a class B DWI misdemeanor, the sentence was not severe. Although Texas
law provides for a minimum term of seventy-two hours confinement, the trial court,
pursuant to statutory authority, suspended the imposition of the sentence and placed Adams
on community supervision. See Tex. Pen. Code Ann. § 49.04(b) (Vernon 2003); Tex.
Code Crim. Proc. Ann. art. 42.12, § 13 (Vernon Supp. 2004-2005). 

 We find the State's question, and the officer's response that the reading was over
.08 were not so inflammatory that they could not be cured by an instruction to disregard. 
In light of the facts surrounding the field sobriety tests and the definitiveness of the trial
court's instruction, we hold the trial judge's instruction to disregard cured any error from
the improper evidence. 

 Appellant contends the State engaged in prosecutorial misconduct when the
prosecutor elicited from Officer Bodden the PBT result. Officer Bodden was present on
the witness stand at the time appellant objected to the admission of the PBT result and at
the time the trial judge explained his ruling about the inadmissibility of the quantitative
result on the PBT. The prosecutor may reasonably have assumed Bodden understood the
trial judge's instructions. The record does not support appellant's claim of prosecutorial
misconduct. Issue two is overruled.

 In issue three, Adams argues the trial court erred in not granting a new trial because
the jury considered evidence that had previously been suppressed. According to Adams,
during their deliberations the jurors turned up the volume to hear Officer Bodden state on
the videotape that Adams' PBT test was over the legal limit at the time of the stop. Adams
says this was evidence the State was to remove from the videotape, but did not. Defense
counsel further asserts that a juror told him and the prosecutor "the three 'not guilty' jurors
changed their votes to guilty" right after hearing the videotape. The Rules of Appellate
Procedure provide that the trial court should grant a new trial if, "after retiring to
deliberate, the jury has received other evidence. . . ." Tex. R. App. P. 21.3(f). 

 The trial court granted Adams a hearing on his motion for new trial. The motion
did not include an affidavit and was not verified. In this context, the order denying a
motion for new trial unsupported by any evidence cannot be disturbed on appeal. See King
v. State, 29 S.W.3d 556, 568-69 (Tex. Crim. App. 2000). With no supporting evidence
from any juror, the trial court did not abuse its discretion in denying the motion for new
trial. (1) Issue three is overruled. 

 In issue four, Adams argues the trial court "erred in permitting evidence of the
results of the Intoxilyzer without extrapolation when the evidence was more prejudical than
probat[ive], in violation of Rule 403 of the Texas Rules of Evidence." We review the
admission or exclusion of evidence under an abuse of discretion standard. See Sells v.
State, 121 S.W.3d 748, 766 (Tex. Crim. App. 2003), cert. denied, 540 U.S. 986, 124
S.Ct. 511, 157 L.Ed.2d 378 (2003). The State argues the issue was not preserved. We
disagree. Appellant objected to Officer Bodden's initial reference to the .09 and .094
results, and the trial court indicated the issue would be dealt with later. During the voir
dire of the State's expert intoxilyzer witness, appellant again objected to the admissibility
of the breath test results and lodged a Rule 403 objection, along with other objections. 
The trial court's ruling on the admissibiltiy of the intoxilyzer test result encompassed
appellant's relevancy and Rule 403 objections. 

 Under Rule 403, relevant evidence "may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury. . . ." Tex. R. Evid. 403. Rule 403 presumes the "admissibility of
all relevant evidence and authorizes a trial court to exclude [the] evidence only when there
is a 'clear disparity between the degree of prejudice of the offered evidence and its
probative value.'" Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). The
Court of Criminal Appeals has held that an intoxilyzer test result is relevant under either
definition of intoxication, even without extrapolation evidence, to show intoxication at the
time the accused drove. Stewart v. State, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004)
("[B]reath test results tended to make it more probable that [defendant] was intoxicated at
the time she drove under either definition of intoxication because they provided evidence
that she had consumed alcohol."). The intoxilyzer is probative on the element of
intoxication. See id.; see also State v. Mechler, 123 S.W.3d 449, 455 (Tex. App.--Houston [14th Dist.] 2003, pet. granted). 

 In determining whether the prejudice of admitting the evidence substantially
outweighs its probative value, the relevant criteria include the following: (1) how
compellingly the evidence makes a fact of consequence more or less probable; (2) the
potential the evidence has to impress the jury in an irrational but nevertheless indelible
way; (3) the time the proponent will need to develop the evidence, during which the jury
will be distracted from consideration of the indicted offense; and (4) the proponents's need
for the evidence to prove a fact of consequence, i.e., does the proponent have other
probative evidence available to him to help establish this fact, and is this fact related to an
issue in dispute. See Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); 
Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g). 
But is the evidence here -- the breath test result without extrapolation evidence --
substantially more prejudicial than probative? The record in this case demonstrates it is
not. 

 The first factor asks how compellingly the evidence serves to make a fact of
consequence more or less probable. The fact of consequence is whether Adams was
intoxicated while operating the vehicle. The evidence of the breath test served to make
that fact more probable. See Martinez v. State, No. 04-03-00746-CR, 2004 WL 2671670,
at *6 (Tex. App.--San Antonio Nov. 24, 2004, no pet. h.) (citing Stewart, 129 S.W.3d at
96). Second, the intoxilyzer test results would not have impressed the jury in some
irrational but indelible way. The jury was instructed to convict Adams if, while he was
intoxicated, he operated a motor vehicle; the indictment had similar language. The jury
was not instructed to find Adams guilty if he was intoxicated when he took the Intoxilyzer
breath test. Further, the evidence of the Intoxilyzer test result applies to an allegation in
the indictment. When evidence specifically pertains to an allegation in the indictment, the
evidence is not unfairly prejudicial under a Rule 403 balancing test. See Manning, 114
S.W.3d at 928. In addition, the jury heard testimony on the limitations of the Intoxilyzer
5000 test results. Third, because the breath test results were proof of the charged offense,
the amount of time the State spent developing it is inconsequential since the jury would not
be distracted from the charged offense. Id. Fourth, although the State had other evidence
to prove Adams' intoxication, that evidence is somewhat weak. The State needed the
Intoxilyzer 5000 test result. The factors all weigh in favor of probativeness. Balancing
the factors, we find there is not a clear disparity between the degree of prejudice of
Adams' Intoxilyzer results and their probative value. The trial court did not abuse its
discretion in admitting the evidence. Issue four is overruled. 

 In issue five, appellant argues the trial court erred in increasing Adams' sentence
when Adams would not agree to waive his right to appeal. Adams filed an election to have
the trial court determine punishment. Upon inquiry, the trial judge was told there was an
agreement on punishment. The trial judge then stated he normally does not accept an
agreement on punishment unless the agreement includes a waiver of appeal. Defense
counsel informed the trial judge Adams did not want to waive his right to appeal. The trial
judge did not accept the punishment agreement and proceeded to hold a hearing on
punishment. The trial court assessed the same punishment against Adams as that in the
proposed agreement, with the exception that the fine was increased from $500 to $1,500. 

 Appellant does not direct us to any evidence in the record showing the trial judge
increased the fine because Adams refused to waive his appeal; and we have found none.
Adams testified at the punishment hearing. He explained that on the night of the offense
he had four drinks, the last at 2:00 a.m. He also testified he was a cable installer, had
been married for three years, had no children, and did not support anyone other than his
wife. Adams indicated he had never before been arrested or convicted of any offense. 
The trial court may have decided to impress upon defendant the seriousness of the offense
and may have concluded that because defendant was employed, he could afford a $1,500
fine. Without evidence in the record to support appellant's claim, we overrule issue five. 

 The conviction is affirmed.


 AFFIRMED.



 ________________________________

 STEVE MCKEITHEN

 Chief Justice



Submitted on December 1, 2004

Opinion Delivered January 26, 2005

Publish


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. Because the trial court was not presented with any testimony from jurors, we
need not decide whether juror testimony concerning consideration of excluded evidence
is a type of "outside influence" under Texas Rules of Evidence 606(b).